UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARKUS COKE,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:23-cv-00280-MHH |
| **CITY OF BIRMINGHAM,** *et al.*, | } |
| **Defendants.** | } |

**MEMORANDUM OPINION AND ORDER**

In this civil rights action, *pro se* plaintiff Markus Coke contends that Birmingham Police Officer Nicholas George violated his constitutional rights while Officer George was working for Zydeco, a night club located in downtown Birmingham. Mr. Coke has sued the City of Birmingham, the Birmingham Police Department, and Zydeco.[1] Mr. Coke alleges that the defendants violated his civil rights when Officer George stopped him after he left Zydeco and transported him back to Zydeco against his will. Pursuant to 42 U.S.C. § 1983, Mr. Coke asserts against the defendants claims for violations of his rights under the Fourth and Eighth

---

[1] Mr. Coke also sued "N.A. George" and Destini Teele. (Doc. 1). Mr. Coke did not serve Officer George with a summons and complaint, and Officer George has passed away. (*See* Doc. 3; Doc. 50, p. 2, ¶ 3; Doc. 61-1, p. 3). The Court has dismissed Ms. Teele as a defendant. (Doc. 45). The City, the BPD, and Zydeco remain as defendants.

1

Amendments and state law claims for kidnapping, false arrest, assault, harassment, fraud, false imprisonment, unlawful arrest, and conspiracy. Mr. Coke and the defendants have filed motions for summary judgment on Mr. Coke's claims.

This opinion resolves these pending cross-motions. The opinion opens with a statement of the legal standard that governs cross-motions for summary judgment. Then, consistent with that standard, the Court summarizes the evidence in the summary judgment record. Based on the evidence in the record and the governing legal standards for each of Mr. Coke's claims, the Court then resolves the parties' summary judgment motions.

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). When a district court receives cross-motions for summary judgment, the court "must methodically take each motion in turn and construe all the facts in favor of the non-movant for each. If, after engaging in this analysis, the district court determines no

genuine issue of material fact exists, then it may appropriately enter summary judgment for a party." *Thai Mediation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 926 (11th Cir. 2023). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Additionally, where video evidence "obviously contradicts" the non-movant's "version of the facts," a district court must "accept the video's depiction instead of [the non-movant's] account." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Because Mr. Coke is a *pro se* litigant, the Court construes his submissions liberally. *Caldwell v. Warden*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing

3

*Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002)).  The Court considers as evidence "specific facts" in Mr. Coke's sworn complaint and other sworn submissions.  *Caldwell*, 748 F.3d at 1098 (quoting *Perry v. Thompson*, 786 F.2dd 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in sworn form.")); *Stein*, 881 F.3d at 857.

## II.

On March 12, 2021, Mr. Coke went to Zydeco.  (Doc. 1, p. 4; Doc. 61-3, pp. 6–8).  At the time, JJ DeLuca was the manager of Zydeco, and Officer George was providing security at Zydeco while he was off duty for the BPD.  (Doc. 61-2, p. 2; Doc. 59-1, p. 3).  Officer George was wearing his Birmingham Police Department uniform while working as an off-duty officer.  (Doc. 59-1, p. 3).

Mr. Coke was asked to leave Zydeco and was escorted out of the establishment.  (Doc. 61-3, p. 8, tp. 23–25; Doc. 59-1, p. 3).  Officer George approached Mr. Coke as he was getting into his vehicle.  (Doc. 61-5, 11:17–11:49).  Mr. Coke and Officer George had a disagreement, (Doc. 61-5, 11:17–11:49), and Mr. Coke sped off and ran the stop sign at an intersection near Zydeco.  (Doc. 61-3, p. 10, tp. 32–33; Doc. 61-5, 11:47–11:52).[2]  Officer George got in his BPD

---

[2] Officer George did not record his conversation with Mr. George; Officer George turned on his body camera at 11:47 p.m.  (*See* Doc. 61-5, 11:17–11:47).

4

cruiser and pursued Mr. Coke. (Doc. 61-5, 11:51–12:39). The pursuit ended at Black Market Bar & Grill, approximately five blocks from Zydeco. (Doc. 1, p. 4; Doc. 61-3, p. 12, tp. 38–40; Doc. 61-5, 12:49–12:55).

At Black Market, Officer George drew his weapon as Mr. Coke exited his vehicle. (Doc. 1, p. 4; Doc. 61-3, pp. 11–12; Doc. 61-5, 12:50–12:55). Officer George handcuffed Mr. Coke and placed him in the back of the police cruiser. (Doc. 1, p. 6; Doc. 61-5, 12:59–14:01). Officer George retrieved Mr. Coke's wallet. (Doc. 61-5, 13:40–13:45). Meanwhile, Officer Joshua Willis arrived at the scene. (Doc. 61-1, p. 6; Doc. 61-5, 14:01). Officer George sent Mr. Coke's license information to dispatch to determine whether Mr. Coke had active warrants; there were none. (Doc. 61-5, 14:56–15:09). Officer George guided Mr. Coke out of the cruiser and removed the handcuffs. (Doc. 61-5, 17:14–17:49). Officer Willis led Mr. Coke through a field sobriety test. (Doc. 61-5, 18:00–22:38). Mr. Coke passed two of three categories of the field sobriety test. (Doc. 61-5, 16:15, 22:40–24:47). Mr. Coke did not have proof of insurance with him. (Doc. 61-5, 35:14–35:45). In searching for his insurance card, Mr. Coke informed the officers that he had a pistol in his vehicle. (Doc. 61-1, 34:07–34:34). Mr. Coke provided Officer George a copy of his pistol license. (Doc. 61-1, 34:48–34:50).

At the end of the encounter, Officer George issued Mr. Coke a citation for failure to stop at a stop sign; failure to use a seatbelt; reckless driving; and failure

to display insurance. (Doc. 1, p. 9; Doc. 61-5, 37:00–38:15). Then, Officer George informed Mr. Coke that he was taking him for "a ride . . . back up [] to Zydeco" because the owner wished to speak to Mr. Coke. (Doc. 1, p. 9; Doc. 61-5, 38:15–38:24). Mr. Coke agreed and stated that he "w[ould] listen to him." (Doc. 61-5, 38:23–38:26). Mr. Coke opened the police cruiser's back passenger door and entered the cruiser. (Doc. 61-5, 38:40–38:54).

At Zydeco, Mr. DeLuca walked to the patrol vehicle and told Mr. Coke he was not allowed to visit the establishment. (Doc. 1, p. 9; Doc. 61-3, p. 12, tp. 41; Doc. 61-5, 41:05–41:30).³ Officer George then drove Mr. Coke back to Black Market and dropped Mr. Coke at his vehicle. (Doc. 61-3, pp. 13–14; Doc. 61-5, 41:40–43:01).⁴ Mr. Coke did not seek medical treatment or make an insurance

---

³ The body camera footage does not show Mr. DeLuca as he spoke with Mr. Coke. The footage does not capture all of Mr. DeLuca's conversation with Mr. Coke, but Officer George's body camera recorded Mr. DeLuca stating to Mr. Coke: "Hey, man. You can't come back up here anymore, okay?" (Doc. 61-5, 41:05–41:30).

⁴ Mr. Coke attached to his complaint a letter addressed to the clerk for the City of Birmingham that Mr. Coke filed on December 16, 2021. (Doc. 1, pp. 8–12). In his letter, Mr. Coke provides the following description of events:

> I and my party left Club Zydeco on the date stated above located at 2001 15th Avenue S, and parked three blocks from Club Zydeco to go to another establishment. After I properly parked and was getting out of my vehicle, I noticed blue lights being turned on behind me and in the roadway. I and the other two in my party completed the exit from my vehicle. The husband asked N.A. George, officer no. 3685, "WHY ARE YOU STOPPING HIM HE DID NOT DO ANYTHING." N.A. George, officer no. 3685 replied in a loud aggressive tone, "GET THE [EXPLETIVE] OUTTA HERE" in case you did not believe what you read, let me repeat what N.A. George, officer no. 3685 said to two citizens of Birmingham, Alabama. "GET THE [EXPLETIVE] OUTTA HERE." . . . N.A. George, officer no. 3685 asked for my drivers license, he then told me I was under

claim because of the encounter. (Doc. 61-3, pp. 15–16, tp. 53–54).

### III.

\*\*\*

The Court begins its analysis of Mr. Coke's claims with his claims against the City of Birmingham and the Birmingham Police Department. "[P]olice departments are not usually legal entities subject to suit," and the "capacity to sue or be sued shall be determined by the law of the state in which the district court" is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (collecting cases). In the City of Birmingham's answer in this case, the City asserted that "the Birmingham Police Department is a department of the City of Birmingham and not a separate entity from the City." (Doc. 47, pp. 1–2; *see also* Doc. 5, p. 2; Doc. 5-1, pp. 4–7; Doc. 62-1, pp. 27–30). Indeed, under Alabama law, police departments and other "subordinate entities of municipalities, counties, and towns that are not separate legal entities or

---

arrest, he handcuffed me, put me in the back of his patrol car. He said nothing to me, I knew I was going to jail, why, I did not know. He then drove three blocks back to Zydeco, where we had just left minutes ago. He parked in front of the Club, the front door is only about 15 feet away, someone was waiting at the door and when he [saw] the patrol car pull up, he walked over to my door and told me that I was barred from the Club. The man walked away and we drove off. N.A. George, officer no. 3685, drove back to my parked car, I stayed handcuffed in the back seat while he was doing something in the front seat. It seemed like hours but after minutes N.A. George, officer no. 3685 got out, opened my door, unhandcuffed me, handed me my drivers license, handed me traffic tickets and drove away.

(Doc. 1, pp. 8–10). Per *Scott* and *Gee*, the Court credits the body camera evidence over Mr. Coke's account of the events where the video evidence contradicts Mr. Coke's version of events. *See Scott*, 550 U.S. at 380; *Gee*, 625 F.3d at 1315.

7

bodies do not have the capacity to sue or be sued" absent specific statutory authority. *Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) (quoting 56 Am. Jur. 2d Municipal Corps. § 787 (2000)); *see also Jones v. Hutchinson*, Case No.: 2:08-cv-02082-HGD, 2008 WL 11423963, at *1 (N.D. Ala. Dec. 18, 2008) (citing *Dean*, 951 F.2d at 1214) ("The City of Birmingham Police Department is not a legal entity subject to suit under 42 U.S.C. § 1983 and therefore is not a proper defendant in this action.").

Because the Birmingham Police Department generally is not subject to suit, and Mr. Coke has not cited a statutory basis for his claims against the BPD, the Court concludes, as a matter of law, that Mr. Coke may not pursue federal or state claims against the Birmingham Police Department.

Mr. Coke asserts his federal constitutional claims against the City under 42 U.S.C. § 1983. Municipalities may not be held liable under § 1983 for the acts of city employees under the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *McDowell v. Brown*, 932 F.3d 1283, 1289 (11th Cir. 2004). To hold a city liable under § 1983, a plaintiff must demonstrate that he was deprived of a federally protected right by the tortious act of a city employee who acted "pursuant to official municipal policy." *Monell*, 436 U.S. at 697; *see also Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the

municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." (emphasis in *Pembaur*)). For the City to be liable, Mr. Coke must show that his constitutional rights were violated, that the City has a custom or policy that constituted deliberate indifference to his constitutional rights, and that the policy or custom caused the constitutional violation. *McDowell*, 392 F.3d at 1289.

For purposes of *Monell* liability, a policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A municipality can be liable when 'a series of decisions by a subordinate official manifest[s] a 'custom or usage' of which the supervisor must have been aware.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Here, Mr. Coke has not provided evidence of a municipal policy or custom to support his claim against the City as required by *Monell*. In his deposition, Mr. Coke

9

stated that the body camera footage supports his assertion that the City has a policy or custom of violating individuals' civil rights, (Doc. 61-3, p. 16, tp. 55–57), but the body camera footage shows only the March 12, 2021, encounter. A single instance of alleged constitutional violations cannot support § 1983 liability against a municipality. *See City of Huntsville*, 30 F.3d at 1343; *Depew*, 787 F.2d at 1499. Because Mr. Coke has not identified a custom or policy implemented or adopted by the City that causes BPD officers to deprive citizens of their Fourth or Eighth Amendment rights, the City is entitled to summary judgment as a matter of law.

The City asserts that Mr. Coke has abandoned his state law claims against the City. (Doc. 62-1, p. 30). In his response to the City's motion, (Doc. 66), Mr. Coke does not address the City's argument concerning his state-law claims. Therefore, Mr. Coke has abandoned those claims. *See Jordan v. Conway*, 441 Fed. Appx. 761, 762 (11th Cir. 2011) (quoting *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)) ("Although we construe *pro se* briefs liberally, 'issues not briefed on appeal by a *pro se* litigant are deemed abandoned.'"). The Court will enter judgment for the City on those claims.[5]

---

[5] The Court notes that under Alabama law, a city may be sued for negligent acts of its employees but not intentional torts of its employees. ALA. CODE § 11-47-190; *Franklin v. City of Huntsville*, 670 So. 2d 848, 850 (Ala. 1995) ("Section 11-47-190 provides for an action against a municipality for the 'neglect, carelessness, unskillfulness' of its agents, not for their intentional torts."); *see also Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998). Under Alabama law, assault and fraud are intentional torts. *Wright v. Wright*, 654 So. 2d 542, 545 (Ala. 1995) (assault); *McCullough v. Allstate Prop. and Cas. Ins. Co.*, 256 So. 3d 103, 110 (Ala. Civ. App. 2018) (quoting *Patten v. Alfa Mut. Ins. Co.*, 670 So. 2d 854, 856 (Ala. 1995)) (fraud). False arrest and false imprisonment

\*\*\*

Turning to Mr. Coke's claims against Zydeco, Mr. Coke asserts that Zydeco is liable for Officer George's conduct in detaining him and transporting him from Black Market to Zydeco and back again to his vehicle at Black Market. To support his state law claims concerning this series of events, Mr. Coke relies on the fact that Officer George was working off-duty as a security guard for Zydeco at the time of the encounter, not as a Birmingham police officer. (Doc. 61-3, pp. 19–22).

An off-duty police officer's status may transform into active duty if he or she witnesses a crime. *Dinmark v. Farrier*, 510 So. 2d 819, 820–21 n.1 (Ala. 1987) (citing *Robinson v. State*, 361 So. 2d 1113 (Ala. 1978) ("A change in the policeman's status would occur if he saw a crime committed in his presence."); *Perry v. Greyhound Bus Lines*, 491 So. 2d 926, 926 (Ala. 1986) ("Because the offense for which Perry was arrested was committed in the officers' presence, we affirm

---

traditionally are intentional torts unless a plaintiff proves that such acts are part of "a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness.'" *Franklin*, 670 So. 2d at 852. The Court is not aware of a civil harassment claim other than a claim for sexual harassment, and sexual harassment is an intentional tort. *See Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 985 n.3 (Ala. 1999) (quoting *Potts v. BE&K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992)). Kidnapping is a crime, not a tort. *See* ALA. CODE §§ 13A-6-43, 13A-6-44. Additionally, "[a] plaintiff alleging a conspiracy must have a valid underlying cause of action." *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (quoting *Callens v. Jefferson Cnty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000)) (brackets added). Thus, under Alabama law, Mr. Coke may not pursue his state law claims against the City.

summary judgment . . ..");  *see also Parker v. Dillard's Inc.*, Case No.: 1:20-cv-00111-CLM, 2021 WL 63342, at *1–2 (N.D. Ala. Jan. 7, 2021).

Here, as Officer George's body cam recording shows, as Mr. Coke drove away from Zydeco, he ran a stop sign. That is a violation of Ala. Code § 32-5A-112(B). (Doc. 61-3, p. 10, tp. 32–33; Doc. 61-5, 11:47–11:52). When Officer George witnessed Mr. Coke run the stop sign, his status as an off-duty police officer transformed into active duty, and Officer George could pursue and detain Mr. Coke. *See Dinmark*, 510 So. 2d at 820–21 n.1. To the extent that Mr. Coke contends that Officer George unlawfully transported him to Zydeco to speak to Mr. DeLuca, the video evidence demonstrates that Mr. Coke opened the BPD cruiser door and voluntarily accompanied Officer George to Zydeco. This video evidence contradicts Mr. Coke's effort to cast his return to Zydeco as kidnapping or an unlawful arrest. Accordingly, Mr. Coke's claims against Zydeco fail as a matter of law.[6]

## IV.

For the reasons explained above, the Court grants the defendants' motions for summary judgment and enters judgment for the defendants on Mr. Coke's claims. Because the Court grants the City's and Zydeco's motions for summary judgment

---

[6] To the extent that Mr. Coke attempts to assert a § 1983 claim against Zydeco by describing Zydeco as liable "under the color of state," Mr. Coke has not pleaded or otherwise demonstrated that Zydeco, a private business, falls into one of the narrow exceptions to the general rule that private parties are not state actors for purposes of § 1983. *Charles v. Johnson*, 18 F.4th 686, 694–96 (11th Cir. 2021) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)); *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

as to each of Mr. Coke's claims, the Court denies Mr. Coke's cross-motion for summary judgment. The Clerk of Court shall please TERM Docs. 54, 59, and 62 and close this case. The Clerk of Court shall please also mail a copy of this order to Mr. Coke.

**DONE** and **ORDERED** this September 18, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE